3259 and 21-13624 United States of America v. Muller Vedrine. Mr. Wax, you have reserved five minutes for rebuttal and with that you may proceed. Thank you. May it please the court, good morning. My name is Barry Wax and I represent the appellant Muller Vedrine. The first issue that I'd like to address with the court deals with the unreasonable delay in the examination or the actual obtaining a search warrant, extracting the data from it and examining the data in this case. And what we have set out in our brief and of course in the proceedings below is that the time frame between the seizure of the phones on Subsequent to that, there was an examination of forensic extraction and examination of the phones that culminated on August 5th with a report being produced. Now this investigation was assigned to a special agent Kasmerzik with the Secret Service. The original arrest and seizure of the phones was done by the Miami-Dade Police Department. On the day of the arrest and seizure of the phones, June 4th, the Miami-Dade Police Department called in the Secret Service and Agent Kasmerzik immediately participated in this investigation. Mr. Wax, just in starting with this time period and you say that there's an unreasonable delay, but based on what I have seen looking at the record before us, it looked like there was some delay attributable to Target giving the video. It looks to me like it was otherwise diligently pursued. What period of time would you consider to be reasonable and why is this now unreasonable? Well, the delay in obtaining the Target surveillance video, actually it wasn't the delay so much in obtaining it as it was getting past the firewall of the Secret Service to be able to view it. But what's more significant... Is that not a legitimate delay period? I would agree with Your Honor that it is. However, the truth of the matter is that the very next day after the seizure of the phone, June 5th, Agent Kasmerzik went to Target and viewed the video. She had all of the information she needed on June the 5th. What really caused the unreasonable delay in this case was the period of time from when the search warrant was signed, which was June 18th of 2019, until June 27th of 2019 because due to bureaucratic delay by the Miami-Dade Police Department, they would not release the phones to the United States Secret Service. Should that be attributed to the agent? I would... Another agency's delays in their bureaucracy? No, because Agent Kasmerzik actually, once she received the search warrant and encountered this delay, prepared the documentation which was necessary for her to go ahead and start the ball rolling bureaucratically. But she had been involved in this case from its inception. Miami-Dade Police Department brought them in. She had a signed search warrant which was presented up to the Miami-Dade Police Department for the phones, which granted her the authority to take custody of those phones at that time. And the unreasonableness of the delay was attributable to the holdup, and that was by Miami-Dade Police Department. It is more of a holistic approach looking at law enforcement in total. Counsel, I just want to split things up because I think we're mashing two things together. So there's the delay in getting the search warrant. You're past that now. Judge Branch asked you the question, and you sort of glided past that. Right. And then you focus now on the second delay claim, which is the delay to extract the data from the phone once the warrant was obtained. That's correct. That's what we're talking about right now, right? That's correct. Okay. As to that, I thought that both the findings of the district court and the records supported, it was really undisputed, that while the agency, the agents were working together and that at some point she may have had access to the phone, at some point the property department at Miami-Dade was not giving it up. Some supervisors had to exchange some memos to each other. And then at some point, about a week later, they finally got released. Is that correct? I think that's accurate. Yes, Your Honor. That's unattributable. How can we attribute that constitutionally to the Secret Service where there's, again, diligent efforts to try to get the phone out of the bowels of the Miami-Dade Police Department? I don't believe that it's appropriately attributed to the Secret Service. I believe it's appropriately attributed to the overall governmental conduct by both agencies because there was also a concurrent state case going on. Mr. Vadreen had been arrested by the state authorities and had bonded out of custody. Upon bonding out of custody, he went to the Miami-Dade Police Department and asked for the return of his phone. But, again, that goes to the initial – that goes to the delay with regard to the initial. I'm really trying to be careful to separate these because they really are separate claims. That goes to the initial getting the warrant claim and whether that was a problem. But once the warrant's obtained, he doesn't have a right to the phone at that point. I mean at that point, there's probable cause to determine that there is evidence of criminal activity on that phone. And he doesn't have an absolute possessory right to it, right? I agree with that, Your Honor. There's also a delay period from the time that the phone was obtained and then the phone was extracted. Well, that goes to – We know that goes to Rule 41. Right. But that goes back to Judge Branch's question, which is there it seems to be a couple things going on. One is the issue of getting the target video and then unlocking it so that it could be reviewed and watched to be able to put into the body of a warrant. Correct. And then the second thing seemed to be that the agent had other stuff going on. I mean she testifies to an investigation at Fort Lauderdale Airport, an extradition issue. I think she was on a weekend surveillance overnight with regard to someone. As I read our case law, we seem to have suggested that that's the sort of thing that's okay and that is taken into account on the government side. In other words, the cases – I think it's Mitchell where – it's where the government just sat on its hand and said, I knew this was there. I just didn't feel like dealing with it for a week. That's inexcusable. But we – listen, I have other cases going on at the same time. That seems to be a tip in the favor of the government. Is that right? When we look at that – at the laced factors, which really is the 11th Circuit precedent on this issue, Your Honor, I think you're speaking directly to them and they are appropriately applied in this scenario. I think the distinguishing factor is that Agent Kasmerzik is part of a squad of 10 individuals, 10 agents who work in this area who, by her testimony in the hearing, collaborate, work together and handle cases together. And there would have been another individual present to stand in her shoes. Also, the scope of the warrant, the number of paragraphs which directly related to the probable cause in this case were very limited. The majority of them were cut and paste, which is addressed in the Mitchell case. Even then, I think Mitchell said it was like three – it was like – I think Mitchell was like a paragraph here. It was like three or four – two or three original paragraphs that dealt directly. In other words, non-boilerplate dealt directly with this. That seems to be consistent with what we've said is sort of original and allows some sort of time in order to do that. And then on top of that, there was the back and forth with the U.S. Attorney's Office. I mean that too is – that seems reasonable. In other words, as long as the ball is rolling, even if it's rolling slowly, that seems to be enough, no? I think the linchpin, of course, is reasonableness, and that is for the court to determine based on the application of the facts you've isolated to the case law. But also, these are very brief, relatively speaking, periods of time. We're not talking about delay of a year where something is just sitting there. These are – we're talking about weeks in between these time periods. How – what is a reasonable time period? Well, that's what's difficult to say, Your Honor, and I think we have to look to the use of cell phones in modern times now. It's almost as if it's a separate appendage to your body. It contains, as was recognized in the case law, it contains so much personal information that's integral to the daily lives of the owner of the phone. Right, but we're talking about – It's hard to be expansive or contractive. Right, but as Judge Lux said, once the warrant is obtained, your client has no right to the phone. And there is only a 14-day delay between his arrest and his issuance of the search warrant. I'm just trying to figure out when 14 days is unreasonable. Well, it's not just limited to the 14 days, Your Honor. It goes – excuse me – by Rule 41, it goes forward to the extraction of the phone as well. Well, I'm talking about the delay between the arrest and the issuance of the search warrant. You have another issue with the extraction. But so right now, looking at that one period, we have 14 days, and you are saying that this is unreasonable. Certainly, Your Honor, and obviously it's integral to the case, integral to my client's situation, and I recognize the uphill battle that we have. But what about the fact that he has other phones? So I think I might agree that if I was deprived of my phone and I only have one for 14 days, that would probably cause my life some hardship. But if I'm someone, for example, who has five separate phones, only some of which were taken – and I think the record supports that – does that mitigate against the sort of the possessory or property interest that you're asserting here? I don't believe that it does mitigate against it, Your Honor, because the other phones may not be the phone that the individual uses for his daily life. Remember, the phone that we're talking about in question was seized from him at the time of his arrest. The other phones were located later after the search of the apartment. With a lot of personal information of other people. What they were able to abstract. In a car that was stolen. That's in the car that was stolen on that date. But the other phones that you're referring to were in the apartment and seized pursuant to the second search warrant. In other words, is the inference not – and I know we're ending the time – but is the inference not the phones you have in the stolen car with the personal information, the dirty phones, and then the clean phones are the ones in your apartment, which also, I guess, add some stuff there. Syllogistically, Your Honor, I don't see it as being the only conclusion that the court can make in an if-then analysis. I think so. All right. Counsel, you have reserved five minutes for a rebuttal. Mr. Dionne. Good morning, Your Honor. This may please the court. Scott Dionne on behalf of the government. This case is about a problem that law enforcement face every day. A busy workload and prioritizing important workload. Agent Kazmarzich in this case spent the first three days of her investigation diligently pursuing a search warrant, after which she was unable to access the target footage. Can I fast forward a little bit? I'd like to talk about the second claim, the delay claim with regard to the extraction, okay? Is it the government's position that there can never be a constitutional delay or a Rule 41 delay with regard to extraction? Well, Your Honor, a Rule 41 violation and a constitutional violation are separate things. I agree. That's why I mentioned both. And so in cases where the government perhaps acts unreasonably, of course, this court might find that there's a constitutional violation. Do you agree that there is a level at which a delay in extracting information from a phone, which a valid search warrant is given, would cause a constitutional delay? I think there's cases to support that. And I do agree that there's some scenario in some world that there would be a delay long enough to support that. Let's talk about that world. So let's say that the backlog, and not illegitimate backlog, is a year. An agency is just understaffed and underfunded. They only have one person doing it in a busy city with a lot of fraud and a lot of dirty phones out there. And it takes a year for it to get done. Is that unreasonable? It depends, Your Honor. I gave you the facts. Tell me under those facts. Under those facts, we'd have to, again, just assess the Layston-Mitchell factors, which would be the defendant's possessory interest in the phone, the length of the delay, consent, et cetera. And once the search warrant is issued, the possessory interest, as you had observed during the appellant's argument, is that the possessory interest is almost nothing. Well, I'm not sure it's almost nothing with regard to the data. In other words, even the search warrant acknowledges that not everything on the phone is evidence of a warrant. That's the whole reason that there's a protocol, right? So you download the whole thing, and then there's some search criteria that you do. You don't say everything in there, every little zero and one or dot and tittle is part of criminal activity. So there's something that's seized that the defendant has a privacy or property interest in that even the government is not claiming is evidence of crime. So with regard to that information, the government has seized it. It's been a year. Why is that not a basis to find that the delay is unreasonable just because the government doesn't feel like hiring another person or making it a quicker process to download the material? Well, it could be, and that's, Your Honor, a tough question. But in this case, we're dealing with a much shorter delay. We are, but there's still the backlog issue. And I just wondered where that is because it seems to me at some point that the backlog is enough and the government is not diligent enough that it does ripen into something. I don't know what that something is, and I don't know that it's harmful in a particular case, but it does seem to me that at some point the government can't just sit on it and claim we don't have enough time or resources. Just to be clear, Your Honor, are we talking about because in the initial argument we were talking about the delay between the extraction, or I'm sorry, the search warrant and the extraction. That's what I'm talking about here. Okay. And that's a nine day. So here we have about six weeks, nine weeks. Is that about right? No, Your Honor. The phones were, I'm sorry, yeah. Yeah, there was about six or nine weeks between the receipt of the phones and the extraction data. Right. Not even the receipt, but it's really the warrant period, the period when they get the warrant to when they extract it. I'm sorry, Your Honor. Let me correct the record on that. The warrant said that the phone, the data from the phones had to be extracted by July 1st. Government complied with that. The delay here and the delay that- Is analyzing the data. Is analyzing the data. Right. Correct. So when we're talking about the extraction, the government complied with the search warrant. I'm not sure there's any world in which that could be- Right. We're talking about actually looking at it. Right. When someone actually peeks under the hood. Got it, Your Honor. Okay, and again, that's another scenario where there could be unreasonable delay, and we concede that. However, in this case, there was no unreasonable delay because it was a 21-day- Well, I have a question also about reasonableness of delay. Would you say that the interest of both the agency, that is the Secret Service, and the police department is the same, they're law enforcement, so should the United States be able to put forth the delay of a fellow interested entity as a delay that it should be allowed to be excused for in performing its duty? Other words, should they be able to lay this off on the police department in Miami-Dade rather than it's really the same group, is it not? It's law enforcement. At the end of the day, we're talking about whether the search and seizure was unreasonable. So, yes, I mean, there's some level of consideration of government conduct as a whole or law enforcement as a whole. Similar to what Judge Luck asked you, how much of a delay can a fellow law enforcement agency engage in that would be attributable in a way of excusing the conduct of the United States government? It's impossible to draw a bright line on that. But you agree, though, that that should not be something that could be discounted easily on behalf of the United States? I agree, Your Honor. I think, but in this case, we're talking about a fairly short delay in terms of between the extraction and the actual review. Would it matter why the delay was, say, for here? I think my recollection here is that it was because of some memorandum required between the Secret Service and the police department. Right. For the Secret Service to get their hands on the phones, there was some back and forth between the Secret Service and the police department. And the record shows that Agent Kesmarzich was asked, getting her supervisors involved, had wrote the memo, had her supervisors call supervisors over at the police department. And so on these facts, we're asking whether she diligently pursued the investigation. And with all those in mind, the answer is yes. And I'd just like to circle back to sort of the main issue here, which was the delay between the initial seizure and the search warrant. And I think that was the focus of the briefing, Your Honors. I don't think there was any unreasonable delay in obtaining the search warrant. Agent Kesmarzich worked diligently throughout those 14 days. She had two weekend-long surveillances on a big ATM case. She had an arrest up in Fort Lauderdale that she was committed to. So there's a bunch of factors that show that she diligently pursued the investigation. And she also had to deal with a Secret Service firewall and an email on a very important video. The Court has no further questions on the search. We ask that Mr. Vedran's convictions be affirmed and his sentence be affirmed. Thank you. Thank you. All right, Mr. Wax, you've got five minutes for rebuttal. Very briefly, to address the Court's concern with respect to there could be a constitutional delay in the extraction, I think the Ramirez case, which I believe is even cited in the government's brief, indicates that the general touchstone of reasonableness with governance of Fourth Amendment analysis governs the method of execution of the warrant as well. And so we submit that it was that. It is a potential constitutional violation to do so. The Court spoke in its questioning of the government about a backlog issue. And nowadays, for better or worse, our cases are consumed, our discovery is consumed, with massive amounts of data and massive amounts of documents. This case, really, by comparison, as a modern case, involved two cell phones, both only with 64 gigabytes of storage capacity. And so we're not talking about anything so voluminous or outrageous that it couldn't have been done expeditiously. And perhaps it is an issue that has to do with the backlog because there's not enough personnel working in these labs doing these analyses. That's far beyond the scope of what we're discussing here today. But simply put, you know, we've presented our position to the Court with respect to what we believe was the unreasonable delay in this case. And if there are no further questions from the panel, we would move the Court to reverse the backlog. The one question I'm left with is, is there a constitutional issue once the data has been extracted? In other words, once you extract the data from the phone, and let's assume for the moment that we agree that it complied both with the warrant, Rule 41, and the Constitution, does the agency then have sort of carte blanche to look through it with the protocol in mind at any point that it has to be able to do so? Or is there a constitutional issue with regard to the analysis? I would argue that that's what Ramirez says he does because it actually goes towards the – it governs the method of execution of the warrant. I guess, though, is the execution – I agree with you that the method of execution is subject to reasonableness, but is the method the extraction or is the method the analysis that's done once the data has been extracted? Well, I would submit to the Court that it actually includes the examination of the data within a reasonable time. I don't think that it's – as you indicated earlier, the appellant here, once the search warrant is entered, is issued, his possessory interest in the phones is significantly diminished. So if the data that's inside the phones is not being examined for some period of time, then he's losing the opportunity to regain that possessory interest. Let's analogize to physical evidence for a moment. So imagine it's just a notebook. There's a notebook with Social Security numbers written down. That's how it was done in the old days, right? Now it's all on a phone. So they find the notebook. They seize the notebook. It's done within 30 days pursuant to the warrant, and then it sits on a shelf for nine months before come trial time. And then on the eve of trial, somebody goes through it and says, ah, here are all the Social Security numbers that we need and brings it over to trial. Is that problematic, that even though there was a warrant, it's in the shelves properly, that someone didn't bother or only looked at it for the first time nine months after? I'm not sure that the analogy would pertain in this particular case because I don't think you can compare a notebook to a cell phone because of the unique personal data that's contained in a cell phone. And I dare say that someone in possession of a notebook containing numerous Social Security numbers not belonging to them would be calling for the return of it. Well, the notebook also has my math homework and my recipe for brisket. Well, I wouldn't want to lose my recipe for brisket. Definitely wouldn't want to lose that. But my point is it has some personal information in there like my cell phone. I think that at some point in time, the delay in the examination clearly becomes unreasonable because then you're not really recognizing the defendant's claim or demand for return of the document. You're saying, well, we'll get to it when we get to it. And that's where I think there needs to be a more expeditious examination of the issue. Had Mr. Vadreen not called for the return of his phones, I think we would be in a much different posture in terms of the argument that we're making here. But I do think that that's a linchpin of the argument. So we would move for reversal of the court's denial of the motion to suppress. Thank you. Thank you.